466 So.2d 1265 (1985)
Jack LAND, Appellant,
v.
CESSNA AIRCRAFT CO., and Cessna Finance Corp., Appellees.
No. AY-90.
District Court of Appeal of Florida, First District.
April 15, 1985.
*1266 John J. Sulik of Dawson, Galant, Sulik, Ellis & Wiesenfeld, Jacksonville, for appellant.
Gerald W. Weedon of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellees.
JOANOS, Judge.
Appellant Jack Land (hereinafter Land) appeals from a summary final judgment on a counterclaim for deficiency brought by appellee Cessna Finance Corporation (hereinafter Cessna). The question before us is whether a secured creditor who pursues a remedy of replevin and sale is subsequently entitled to sue for a deficiency. Under the circumstances of this case, we answer that question in the affirmative and affirm.
On March 30, 1979, Land and two others who are not parties to this cause executed a promissory note to Gil Air, Inc., as part payment of a plane purchased from Gil Air, Inc. On the same day, Gil Air, Inc. assigned the promissory note and conditional sales contract to Cessna.
On April 2, 1980, Land sued Cessna for breach of warranties; and on July 31, 1980, Cessna filed its answer and counterclaim. Count I of the counterclaim alleged that Land was in default on the installment payment due on May 30, 1980, and as a consequence Cessna elected to accelerate payment of the balance. Count II of the counterclaim alleged that Land was in default on the conditional sales contract, and Count III alleged that Land breached the "agreement not to remove the aircraft from its principal base without first securing the written consent of the seller." (The record indicates that the plane had been leased, after which it disappeared and was presumed stolen.) While Counts I and II sought relief in the form of damages, the Count III prayer for relief, sought "judgment in the form of an equitable order requiring [Land] to deliver to [Cessna] possession of the aircraft in question at a place in the State of Florida designated by [Cessna] as well as any other equitable remedy afforded to [Cessna] under the Uniform Commercial Code or the conditional sales contract attached hereto and incorporated herewith ... together with attorney's fee and costs incurred in the pursuit of this action."
On April 24, 1981, a summary final judgment was entered for Cessna, which provided that:
Right, title and possession of the Cessna 210, N-6313N, be and the same is hereby in Cessna Finance Corporation.
[Cessna] have and recover from [Land] the sum of $70,852.79, together with attorney's fees in the sum of $1,500.00, and no costs.
Let Writ of Possession issue for said personal property and execution issue for damages and attorney's fees.
On May 1, 1981, Land requested a rehearing on Cessna's motion for summary judgment, alleging lack of notice. Land's motion to set aside the April 24, 1981, summary judgment was granted, and the motion for summary judgment was rescheduled for hearing. Summary judgment was again entered in Cessna's favor on July 9, 1981. The July 9, 1981, order was phrased in the alternative, and directed:
1. Summary final judgment shall be entered in favor of [Cessna], and against [Land].
2. Right, title and possession of the Cessna 210, N-6313N, be and the same is hereby in Cessna ... and Cessna ... *1267 shall have and recover such personal property from [Land], together with attorney's fees in the sum of $1,500.00, and no costs, or
[Cessna] have and recover from [Land] the sum of $72,584.07, together with attorney's fees in the sum of $1,500.00, and no costs.
At the option of [Cessna],
1. Let Writ of Possession issue for said personal property and execution issue for attorney's fees, or
2. Let execution issue for said damages and attorney's fees.
On August 17, 1981, the aircraft was discovered in the custody of the sheriff of Alachua County and was turned over to an agent of Cessna. On September 30, 1981, after providing appropriate notice to Land, the aircraft was sold for $43,751.00.
On March 2, 1982, Cessna's motion for leave to file counterclaim for deficiency judgment, filed pursuant to Florida Rule of Civil Procedure 1.170(e)[1] and Section 679.504(2), Florida Statutes,[2] was granted. There then ensued a series of motions, continuances, as well as orders granting Land's counsel leave to withdraw. On January 12, 1984, Land filed (1) a motion for clarification of the summary final judgment entered July 9, 1981, on the ground that the summary judgment recited that Cessna was entitled to a writ of possession or money judgment, and no election had been filed; and (2) a motion to compel Cessna to issue a partial satisfaction of judgment on the ground that Cessna had elected the remedy of right, title and possession when it repossessed the aircraft on August 17, 1981. Then on January 13, 1984, Land filed a motion to vacate the July 9, 1981, summary judgment, alleging the court was without authority to enter a decree which ordered "possession in replevin and judgment for the recovery of the purchase price, in perpetuity." Land conceded that the court still had jurisdiction over the parties and the subject matter, but took the position that the relief granted, i.e., alternative remedies, is impermissible under the Uniform Commercial Code. Land's motion to vacate the July 9, 1981, summary judgment was denied.
On February 15, 1984, summary final judgment was entered for Cessna on the deficiency claim in the amount of $29,865.91. Land filed objection to entry of the deficiency judgment, alleging that the claim for deficiency had merged in the July 9, 1981, summary final judgment.
Land argues on appeal that Cessna abandoned the cumulative code remedies in favor of the alternative remedies of the replevin statute. We disagree with this contention. Land's theory apparently had its inception through reference to the rationale of counsel for Cessna in a letter memorandum to Judge Mitchell, in which counsel analogized the alternative order entered on Cessna's counterclaim for deficiency to the alternative judgments permissible under the replevin statute. Neither the pleadings nor the letter memorandum, when read in its entirety,[3] support the theory espoused by Land.
*1268 The remedies provided by the code are to be administered liberally with the aim of placing the aggrieved party in as good a position as if the other party had fully performed. Section 671.106(1), Florida Statutes (1979); 47 Fla.Jur.2d Secured Transactions § 355 (1984). When a debtor is in default under a security agreement, the secured party has recourse to a series of cumulative remedies. Section 679.501(1), Florida Statutes (1979); Ayares-Eisenberg Perrine v. Sun Bank, 455 So.2d 525 (Fla. 3rd DCA 1984); Motorola Communications v. Nat. Patient Aids, 427 So.2d 1042 (Fla. 4th DCA 1983). A secured party may "(1) proceed under part 5 of article 9, (2) proceed under appropriate provisions of the security agreement and (3) proceed as a judgment creditor." Id., at 1045, fn. 9.
While the code remedies are cumulative, the authorities are in agreement that a chosen remedy must be pursued to fruition. "In other words, a secured creditor may first attempt to enforce his rights by one method and if that provides unsuccessful follow another one, but he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him." J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code Section 26-4 (1980). See also: Ayares, at 527; Motorola, at 1045.
A secured creditor who repossesses the collateral may sell the collateral in a commercially reasonable manner, to recover the amount due on the installment contract. Should the sale result in a deficiency, the secured creditor is entitled to a judgment for such deficiency. § 679.504(2), Fla. Stat. (1979); Swindel v. General Finance Corporation of Florida, 265 So.2d 393 (Fla. 1st DCA 1972). Since a deficiency judgment is in derogation of common law, "any right to a deficiency accrues only after strict compliance with the applicable statutes." Hayes v. Ring Power Corp., 431 So.2d 226, 228 (Fla. 1st DCA 1983), and cases cited therein; Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12 (Fla. 1st DCA 1981).
The doctrine of election of remedies has application under the code "only where the alternative remedies are repugnant and inconsistent." Encore, Inc. v. Olivetti Corporation of America, 326 So.2d 161, 163 (Fla. 1976). A replevin action is one of the remedies which may be invoked by a secured creditor, who wishes to repossess by judicial action. White & Summers, Section 26-7.
In this case, although the summary final judgment entered on Cessna's counterclaim for deficiency was phrased in the alternative, Cessna did not pursue alternative remedies simultaneously. First, Cessna secured a writ of possession in replevin for the aircraft, and executed same on August 17, 1981. On August 25, 1981, Cessna notified Land of the repossession and the proposed sale. Then in a letter dated September 16, 1981, Cessna advised Land that the aircraft had been advertised for sale to the highest bidder. Since the proceeds of the sale were less than the amount remaining due on the installment contract, Cessna sought leave to file a counterclaim for the deficiency.
Land has attempted to characterize Cessna's efforts to recover on its security agreement as a replevin action rather than a proceeding under the Uniform Commercial Code. We reject Land's argument. The record in this case reflects unequivocally that Cessna proceeded under the Code in its efforts to recover the debt. The statutory remedies of the Uniform Commercial Code were incorporated into the conditional sales contract assigned to Cessna and incorporated by reference into Cessna's first counterclaim. The Code contemplates the remedies which Cessna has pursued to fruition, i.e., repossession, a commercially reasonable sale, and a judgment for deficiency.
Land acknowledges that the trial court continued to have jurisdiction of the parties and the subject matter when the judgment *1269 for deficiency was entered. The inartful phrasing of the order granting summary final judgment on Cessna's counterclaim, which was occasioned by the disappearance of the aircraft, may not be manipulated to foreclose Cessna from a deficiency judgment to which it was entitled after its strict compliance with the applicable statutes. Hayes v. Ring Power Corp., 431 So.2d 226 (Fla. 1st DCA 1983).
We hold the trial court acted properly in awarding Cessna the cumulative remedies available to a secured creditor under the Uniform Commercial Code.
Affirmed.
WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] Fla.R.Civ.P. 1.170(e), provides:

(e) Counterclaim Maturing or Acquired After Pleading. A claim which matured or was acquired by the pleader after serving his pleading may be presented as a counterclaim by supplemental pleading with the permission of the court.
[2] § 679.504(2) Fla. Stat. (1979), provides:

(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.
[3] The final paragraph of the letter memorandum prepared by Mr. Weedon, counsel for Cessna, states:

Under the Uniform Commercial Code and the replevin statutes the plaintiff's remedies are cumulative as long as they are not inconsistent. In the instant case the counterclaim plaintiffs have recovered possession of the item of personal property in question and are now entitled to a deficiency judgment, having complied with the Florida Statutes in regard to disposal of collateral after recovery (Florida Statutes, Section 679.504).
We do not read this as an expression of Cessna's intent to proceed under the replevin statute.